IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          CASE NO. 14-09799 (ESL)

JUAN PAULINO PEÑA                               CHAPTER 11   FILED & ENTERED
ALMA ROSA RIVERA RIVERA

    Debtors                                                  MAR 15 2016

                                                             CLERK
                                                        U.S. BANKRUPTCY COURT
                    OPINION AND ORDER                   SAN JUAN, PUERTO RICO

This case is before the court upon the *Motion to Dismiss* (Docket No. 136) filed by

Bautista Cayman Asset Company ("Bautista Cayman") under Section 1112(b) of the Bankruptcy

Code alleging: (i) substantial or continuing loss to or diminution of the Debtors' estate and lack

of reasonable likelihood of rehabilitation; (ii) Debtors' failure to comply with their reporting

obligations; (iii) Debtors' negative monthly balances on the monthly operating reports in the

majority of the months since the bankruptcy filing dates; (iv) Debtors' apparent inability to fund

post-petition operating expenses, especially when Debtors have not serviced their secured

creditor, Bautista Cayman, the property taxes continue to accumulate, and Debtors' counsel has

not submitted an application for his fees since April 2015; and (v) numerous indicia of a bad faith

filing. The court held a hearing to consider the *Motion to Dismiss* on December 8, 2015 and

March 8, 2016. See Docket Nos. 157 and 189. After considering the parties' arguments, the

*Motion to Dismiss* is hereby granted.

Procedural Background

On November 26, 2014, the Debtors filed the instant voluntary Chapter 11 bankruptcy

petition. The Debtors listed in Schedule A the properties with mortgages in favor of Bautista

Cayman (the "Properties"). See Docket No. 1, p. 22, and Docket No. 39-1, p. 1. The Debtors

valued the Properties at $916,000 and $1,800,000, respectively, for a total of $2,716,000,

disclosing a secured claim over both in the amount of $1,837,284. See Docket No. 1, p. 16.

On January 16, 2015, Doral Bank, predecessor of Bautista Cayman, filed *Proof of Claim*

*No. 5-1* in the secured amount of $1,881,033.96.Doral Bank attached the relevant collateral

documents to establish a valid and perfected first-priority lien on the Properties and any

-1-

accessories over them for their exploitation. Proof of Claim No. 5-1 stands unopposed and is therefore deemed allowed under 11 U.S.C. § 502(a).

On November 24, 2016, Bautista Cayman filed a *Motion to Dismiss or, in the Alternative, for Relief From Stay* (the "*Motion to Dismiss*", Docket No. 136) seeking dismissal for: (i) bad faith or lack of good faith for having filed a bankruptcy to obtain an upper hand or leverage against Bautista Cayman, considering that the Debtors had to refinance a balloon payment on or before September 20, 2016; and (ii) substantial or continuing loss to or diminution of the Debtors' estate and lack of reasonable likelihood of rehabilitation under 11 U.S.C. § 1112(b)(4). Bautista Cayman sustained that as of October 2015, the monthly operating reports filed by the Debtors revealed that they had been operating with yearly deficits, and diminishing cash flow, which foreshadowed further post-petition losses. Following that trend, Batista Cayman asserted that the Debtors would most likely be unable to generate sufficient funds to pay ordinary and necessary expenses, and more so upon the imminence of the mandatory refinancing due on or before September 20, 2016. To that extent, Bautista Cayman submitted a comparative table of the monthly operating reports (Docket No. 136-2), referring to Docket Nos. 30, 55, 69, 70, 71, 83, 88, 96, 98 and 117. In the alternative, Bautista Cayman asserted that if the Court did not dismiss this case, relief from the automatic stay was warranted in favor of Bautista Cayman under 11 U.S.C. § 362(d)(1) and (d)(2).

On December 3, 2015, the Court entered an *Order and Notice* (Docket No. 148) scheduling a hearing to consider the Disclosure Statement.

On December 8, 2015, the Court held a hearing to consider Bautista Cayman's *Motion to Dismiss*. See Docket Nos. 156 (*Audio File*) and 157 (*Minute Entry*). After considering the parties' arguments, the Court granted relief from the automatic stay in favor of Bautista Cayman and allowed the Debtors "a period of 90 days to propose a liquidation plan which incorporated a firm offer by a buyer with the financial capacity to close the sales proposal. Upon failure to file the liquidation plan, the case will be dismissed pursuant to 11 USC 112(b) (4) (A)". *Minute Entry*, Docket No. 157. The Court also determined that:

> . . . there is a continuous diminution of the estate because payments are not being made on the secured claim and there is no evidence that payments are being made

-2-

on the property taxes. So, there is diminution and based on Debtors' own admittance, there is no likelihood of reorganization... so the only alternative is to sell the property. So, considering that scenario, ... the alternative request made by Cayman as to the lifting of the estate even if there are uncontested facts to approve a dismissal under [Section] 1112(b)(4)(A)... I will lift the stay in favor of Bautista Cayman, I would allow a reasonable period of time to negotiate a sale, and if that is not negotiated, then I will dismiss the case. But there is one blank to fill, what is a reasonable time to negotiate a sale. ... I am assuming that even if you foreclose, the ultimate goal is to sell the property and payoff your amounts, so I think that if you get a good offer it will not make a good economic sense not to consider an offer.

*Audio File*, Docket No. 156. In replying to the Court's inquiry, the Debtors' counsel asserted that sixty (60) to ninety (90) days would be reasonable, and Bautista Cayman countered that the maximum should be sixty (60) days. After evaluating the status of the foreclosure proceedings, that court granted the Debtors ninety (90) days to attempt to reach an agreement and sell the Properties to pay the secured claims. The Court also held that failure to do so would result in the dismissal of the case. Id. The 90 days would expire on March 7, 2016.

On February 26, 2016, the Debtors filed a *Motion Requesting Continuance of Hearing and Extension of Time to File an Amended Disclosure Statement and Liquidation Plan* (Docket No. 168)requesting sixty (60) days to file a Disclosure Statement and the liquidation plan as ordered by the Court at the December 8, 2015 hearing. See Docket Nos. 156 and 157. Also on February 25, 2016, the Debtors filed an *Application for Employment of Appraiser* (Docket No. 165) to have the Properties appraised. In support of their motions, the Debtors allege they have a potential buyer, but the transaction had not concluded because an appraisal report is needed to sustain the value requested. The Debtors alleged that they were in the process of closing negotiations with the potential buyer, to then file a motion to conduct a sale and prepare a liquidation plan. Debtors further allege that "[in] order to do a liquidation plan [they] need a prospective buyer, which [they] have now, and to know the exact value of the property, so that the buyer could pay in accordance to the value of the property. The value will be obtained once we receive the appraisal report from the appraiser" (Docket No. 168, p. 2, ¶ 15). The Debtors did not provide any information on the proposed offer, and instead attached copy of a letter from the proposed appraiser dated February 25, 2016. See Docket No. 168-1.

On February 29, 2016, the Court entered an *Order* (Docket No. 171) granting the extension of time to file the Amended Disclosure Statement and Liquidation Plan. The Court also ruled that it would "hold the scheduled date [*i.e.,* March 8, 2016] as a Status Conference on pending matters, including the motion to dismiss filed by Bautista Cayman" (id., lines 16-18).

On March 1, 2016, Bautista Cayman filed a *Motion for Reconsideration* (Docket No. 173) sustaining that: (i)the Debtors had not filed their monthly operating reports since the last one filed for October of 2015 (Docket No. 132-2), which was further cause for dismissal; (ii) dismissal was warranted on previous grounds;(iii) nothing had changed since the last hearing held on December 8, 2015; (iv)the Debtors had not established a need for the extension of time; and (v) that the extension would bypass the previous orders by the Court regarding the forewarned dismissal.

On March 3, 2016, the Debtors filed monthly operating reports for the months of November 2015, December 2015 and January 2016. See Docket Nos. 179, 180 and 181. The monthly operating reports filed show that although they generated additional income, they have failed to pay ordinary and necessary expenses, including Bautista Cayman's secured debt, and property taxes.

On March 3, 2016, the Court entered an *Order* granting Bautista Cayman's request for reconsideration and stating that the Debtors' motions for continuance and extension of time to file amended disclosure statement would be considered at the March 8, 2016 hearing. See Docket No. 178.

On March 7, 2016, the Debtors filed a *Motion for Entry of Order Authorizing the Filing of Letter of Intent of Prospective Purchaser under Seal Pursuant to Bankruptcy Rule 9018* (Docket No. 185) so that only the U.S. Trustee and the Court could have access to the terms of the proposed negotiations between the proposed potential buyer and the Debtors.

Also on March 7, 2016, Debtors filed an amended Disclosure Statement (Docket No. 187) and Chapter 11 plan providing for the liquidation of the properties secured by Bautista Cayman (Docket No. 188). The Debtors did not attach purchase commitments, term sheets, or any suggestion of the terms of the negotiation with Bautista Cayman for a carve-out that would allow

-4-

them to pay its secured creditors, priorities, and leave a benefit to unsecured creditors, factors that would make the plan viable.

On March 8, 2016, the Court held the hearing to consider the pending motions, including Bautista Cayman's *Motion to Dismiss*. See Docket Nos. 189 (*Minute Entry*) and 190 (*Audio File*). After considering the arguments by the parties, the "Court conclude[d] that the Debtor is essentially in the same condition as in December 8, 2015, when the Court found that Bautista Cayman had established cause for dismissal, but allowed, as requested, to file a liquidation plan that incorporated a firm offer" (Docket No. 189).

## Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b) (2). "A core proceeding, for bankruptcy jurisdictional purposes, is an action that has as its foundation the creation, recognition, or adjudication of rights that would not exist independent of a bankruptcy environment." In re Med. Educ. & Health Servs. Inc., 459 B.R. 527, 545 (Bankr. D.P.R. 2011) (citations and quotations omitted).

## Applicable Law and Analysis

Section 1112(b) (1) of the Bankruptcy Code provides for dismissals or conversions in Chapter 11 cases as follows:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court **shall** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b) (1) (emphasis added.)

"Prior to its amendment, [Section 1112(b) (1) of the Bankruptcy Code] provided that a court 'may' dismiss the case upon finding cause, but amended section 1112(b) provides that a court 'shall' dismiss if cause is found, absent unusual circumstances." AmeriCERT, Inc. v. Straight Through Processing, Inc. (In re AmeriCERT, Inc.), 360 B.R. 398, 401 (Bankr. D. N.H. 2007).A secured creditor can meet his/her/its burden to show cause for dismissal or conversion "by demonstrating the existence of any one of the … statutory grounds … that are enumerated in

Section 1112(b) of the Bankruptcy Code, or by showing other cause." In re Santiago Vela, 87 B.R. 229, 231 (Bankr. D.P.R. 1988).

Section 1112(b) (4) of the Bankruptcy Code provides a non-exhaustive[1] list of "causes" to dismiss including:

(A)     substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

11 U.S.C. § 1112(b) (4) (A).

Section 1112(b)(4)(A) ("substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation") entails a two-fold inquiry: (1) whether after the commencement of the case, the debtor has suffered or continued to experience a negative cash flow, or, alternatively, declining asset value; and (2) whether there is any reasonable likelihood that the debtor, or some other party, will be able to stem the debtor's losses and place the debtor's business enterprise back on a solid financial footing within a reasonable amount of time. Both tests must be satisfied in order for cause to exist under 11 U.S.C. § 1112(b) (4) (A). See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1112.04[6][a] (16th ed. 2015); In re Martinez Santiago, 2015 Bankr. LEXIS 3438, *17 (Bankr. D.P.R. 2015); In re Citi Toledo Partners, 170 B.R. 602, 606 (Bankr. N.D. Oh. 1994) ("Section 1112(b) (1) contemplates a 'two fold' inquiry into whether there has been a 'continuing diminution of the estate and absence of a reasonable likelihood of rehabilitation.'")

To satisfy the first prong, "[a]ll that need be found is that the estate is suffering some diminution in value". In re Kanterman, 88 B.R. 26, 29 (S.D.N.Y. 1988). Also, see Taub v. Taub (In re Taub), 427 B.R. 208, 230 (Bankr. E.D.N.Y. 2010), aff'd at 2010 U.S. Dist. LEXIS 104805 (E.D.N.Y. 2010).

---

[1] The list of "causes" is non-exhaustive and thus a case may be converted or dismissed for other causes. See In re AmeriCERT, Inc., 360 B.R. at 401; Tuli v. US Trustee, 124 Fed. Appx. 830, 831 (5th Cir. 2005); 11 U.S.C. § 1112(b) (4) (using the term "includes" before listing various reasons for dismissing a case). A bankruptcy court may also "dismiss a Chapter 11 petition for any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy reorganization process." In re 347 Linden LLC, 2011 U.S. Dist. LEXIS 78843, at *10, 2011 WL 2971496 (E.D.N.Y. 2011) (emphasis added), citing In re HBA E., Inc., 87 B.R. 248, 258 (Bankr. E.D.N.Y. 1988).

"Courts have held that a negative cash flow postpetition and an inability to pay current expenses satisfies the elements of § 1112(b) (1)." In re Northeast Family Eyecare, P.C., 2002 Bankr. LEXIS 856, at *10 (Bankr. E.D. Pa. 2002). "A negative cash flow situation alone is sufficient to establish continuing loss to or diminution of the estate." In re Torres De Jesús, 2012 Bankr. LEXIS 307, at *46, 2012 WL 195516 (Bankr. D.P.R. 2012), citing In re Consol. Pioneer Mortg. Entities, 264 F.3d 803, 806-807 (9thCir. 2001). "Obviously, if the debtor has a negative cash flow after entry of the order for relief in the chapter 11 case, the elements of § 1112(b) (1) are satisfied". In re Northeast Family Eyecare, 2002 Bankr. LEXIS 856, at *10, quoting In re Route 202 Corporation, 37 B.R. 367, 374 (Bankr. E.D. Pa. 1984). Also see Loop Corp. v. United States Tr., 379 F.3d 511, 515-516 (8th Cir. 2004) ("Under the interpretation of § 1112(b)(1) consistently used in bankruptcy courts, this negative cash flow situation alone is sufficient to establish "continuing loss to or diminution of the estate."); In re The V Companies, 274 B.R. 721, 724 (Bankr. N.D. Ohio 2002) ("This element can be satisfied by proving that the debtor has incurred losses or maintained a negative cash flow position after the entry of the order for relief"); In re Schriock Construction, Inc., 167 B.R. 569, 575 (Bankr. D. N.D. 1994) (negative cash flow is ground for dismissal); In re Galvin, 49 B.R. 665, 669 (Bankr. D. N.D. 1985) ("Post-petition negative cash flow is considered by courts to be evidence of continuing losses required by section 1112(b)(1)"); In the Matter of 3868-70 White Plains Road, Inc., 28 B.R. 515 (Bankr. S.D.N.Y. 1983)) ("negative cash flow and an inability to pay current expenses has … prompted conversion.")

Bautista Cayman has demonstrated the first prong of the test through the monthly operating reports filed by the Debtors (Docket Nos. 30, 55, 69, 70, 71, 83, 88, 96, 98and 117) and the comparative table at Docket No. 136-2. Such reports demonstrate a negative and diminishing cash flow. Following that trend, the Debtors are unable to generate sufficient funds to pay ordinary and necessary expenses, and more so upon the imminence of the mandatory refinancing due on or before September 20, 2016 to pay Bautista Cayman. See *Proof of Claim No. 5-1.*

If the Court finds that there is in fact such diminution of the bankruptcy estate, it must

then consider the second prong: whether or not "the Debtor or another party [will] be able to 'stop the bleeding' and return the debtor to solid financial footing within a reasonable amount of time." Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1112.04[6][a] (16th ed. 2015). For purposes of this cause, "likelihood of rehabilitation" does not equate "reorganization". Id. Rehabilitation contemplates the successful maintenance and reestablishment of the debtors' business operations and "to put back in good condition; reestablish on a firm, sound basis." In re Vallambrosa Companies, 274 B.R. 721, 725 (Bankr. N.D. Oh. 2002). Also see Loop Corp. v. United States Trustee, 290 B.R. 108, 113 (D. Minn. 2003) aff'd 379 F.3d 511 (8th Cir. 2004) cert. denied 543 U.S. 1055 (2005). To determine whether a debtor's business prospects are sufficient to justify a finding of a reasonable likelihood of rehabilitation, courts analyze if the causes for debtor's continuing losses can be corrected, and if the debtor or some other party in interest is capable or willing to perform the necessary remediation. This is not a "technical [test] of whether the debtor can confirm a plan, but rather, whether the debtor's business prospects justify continuance of the reorganization effort." In re Original IFPC S'holders, Inc., 317 B.R. 738, 742 (Bankr. N.D. Ill. 2004). Nevertheless, rehabilitation in a Chapter 11 begins with a confirmable plan. It then requires, at minimum, the prospect of reestablishment of a business. See Loop Corp., 379 F.3d at 518. "If the debtor or some other party in interest is unable or unwilling to put together a convincing business plan within a reasonable amount of time, and can offer neither a valid justification for the failure to do so nor a reasonable prospect of being able to accomplish the task in the near future, there is often little reason to proceed with the reorganization." Id. Also see In re Winshall Settlor's Trust, 758 F.2d 1136, 1137 (6th Cir. 1985) ("The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state ... '[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'etre* ...'"); A. Illum Hansen, Inc. v. Tiana Queen Motel, Inc. (In re Tiana Queen Motel, Inc.), 749 F.2d 146, 151 (2nd Cir. 1984) (dismissal warranted where no prospect of rehabilitation because the debtor lacked the "wherewithal necessary to market their properties expeditiously, [an ability] to

-8-

devise a reorganization plan grounded in reality" and where secured creditors suffered as a result); Johnston v. Jem Dev. Co. (In re Johnston), 149 B.R. 158, 162 (B.A.P. 9th Cir. 1992). "A plan for rehabilitation under Chapter 11 must be based on more than speculative data." In re Schriock Constr. Inc., 167 B.R. 569, 576 (Bankr. D.N.D. 1994). "If it is apparent that the debtor has no profitable core around which to structure a plan of reorganization, if the debtor is faced with continuing losses, and if the debtor's assets are declining in value, the best interest of creditors may require the court to dismiss or order liquidation of the debtor's estate under Chapter 7." In re Macon Prestressed Concrete Co., 61 B.R. 432, 436 (Bankr. M.D. Ga. 1986). Also see In re Kors, Inc., 13 B.R. 676, 681 (Bankr. D. Vt. 1981). "However honest in its efforts the debtor may be, and however sincere its motives, the [] Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation." Tennessee Publishing Co. v. American Nat'l Bank, 299 U.S. 18, 22, 57 S.Ct. 85, 87 (1936). "[T]here must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" United Sav. Ass'n v. Timbers of Inwood Forest Assoc's., 484 U.S. 365, 376 (1988) (citations omitted). "Courts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization." In re Canal Place Ltd. Partnership, 921 F.2d 569, 577 (5th Cir. 1991). Also see In re Brown, 951 F.2d 564, 572 (3rd Cir. 1991); In re Torres De Jesus, 2012 Bankr. LEXIS 307, at *43, 2012 WL 195516.

There is nothing in the record of the instant case that suggests that financial viability for the Debtors is reasonably likely in the near future, or that they will suddenly be able to increase the occupancy rate or average daily room rate in their business under current market conditions in Puerto Rico. The monthly operating reports simply demonstrate the contrary. Moreover, the Debtors will soon be required to make a lump sum payment on or before September 20, 2016, cure all arrears to Bautista Cayman (*Proof of Claim No. 5-1*), and propose a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time. A plan of reorganization is simply not feasible for the Debtors, who have not demonstrated any ability to reorganize. The foregoing is sufficient cause for dismissal. See MacElvain v. IRS, 180 B.R. 670, 673 (M.D. Ala. 1995) (finding cause to dismiss the case where "[t]he debtor does not own

-9-

sufficient property nor generate sufficient income to fund a plan of reorganization [and] it is unlikely that the [d]ebtor can effectuate a plan to meet the strictures of the Bankruptcy Code").

In short, the financial information disclosed by the Debtors in their monthly operating reports makes their rehabilitation unlikely, especially in light of the upcoming deadline on September 20, 2016. Thus, Bautista Cayman has demonstrated sufficient cause to dismiss the instant case under 11 U.S.C. § 1112(b) (4).

Once "cause" is established, the burden shifts to the debtor to demonstrate "unusual circumstances" that establish that dismissal or conversion to Chapter 7 is not in the best interests of the creditors and the estate. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1112.05[1] (16th ed. 20105); In re Costa Bonita Beach Resort Inc., 513 B.R. 184, 195 (Bankr. D.P.R. 2014) ("Once cause is found, the burden shifts to the opposing party to show why dismissal or conversion would not be in the best interests of the estate and the creditors.")

In the instant case, the Debtors did not reply to the *Motion to Dismiss* in writing. They did not contest the fact that they were operating at a loss at the hearings held on December 8, 2015 and March 8, 2016. Hence, they did not demonstrate a reasonable likelihood that a plan could be confirmed within a reasonable time frame. Their only contention was they had a potential buyer with a certain alleged potential offer which terms were not disclosed to the parties and intended to keep them that way through an order for seal. See Docket No. 185. No stipulation was reached between the Debtors and Bautista Cayman. At the March 8, 2016 hearing, the Debtors disclosed that the offer to pay Bautista Cayman was for $1 million. Notwithstanding, Bautista Cayman's *Proof of Claim No. 5-1* is in the secured amount of $1,881,033.96. Thus, there is no equity on the Properties, which furthers Bautista Cayman's cause for dismissal.

Once sufficient cause has been demonstrated, dismissal or conversion is mandatory. See 11 U.S.C. § 1112(b) ("the court *shall* … convert … or dismiss"); In re TCR of Denver, LLC, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) (when the elements for "cause" have been established, the court has no choice and no discretion, and must order either dismissal or conversion of the bankruptcy case). The determination of whether to convert or dismiss lies within the broad

-10-

discretion of the bankruptcy court, subject to what is in the best interests of creditors and the bankruptcy estate. See In re Helmers, 361 B.R. 190, 196 (Bankr. D. Kan. 2007).The court finds that dismissal, rather than conversion, is in the best interest of creditors.

Conclusion

For the reasons stated herein, Bautista's *Motion to Dismiss* (Docket No. 136) is hereby granted. Therefore, case is hereby dismissed.

In San Juan, Puerto Rico, this 15th day of March, 2016.

Enrique S. Lamoutte
U.S. Bankruptcy Judge